RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 7/18/14

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| REID ZEISING and DIXIE RESTAURANT GROUP, LLC | CIVIL ACTION NO. 12-2614 |
| VERSUS | JUDGE TRIMBLE |
| MICHAEL A. SHELTON and SHELTON RESTAURANT GROUP, LLC | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court are defendants' Motion for Summary Judgment and Motion to Dismiss seeking dismissal of all claims against them in the above-captioned suit.[1] The parties briefed the motions and participated in oral argument before the court.[2] Having fully and carefully considered the law and arguments advanced by the parties, the court finds that defendants' motion for summary judgment should be GRANTED and defendants' motion to dismiss should be GRANTED in part and DENIED in part.

I. **Relevant Facts**

Plaintiffs in this suit are Reid Zeising ("Zeising") and Dixie Restaurant Group, LLC ("Dixie"). Defendants are Michael A. Shelton ("Shelton") and Shelton Restaurant Group, LLC ("SRG"). Plaintiffs allege that Shelton approached Zeising in 2011 seeking Zeising's expertise in securing financing for the purchase of 29 Popeye's franchise locations in Texas and

---

[1] R. 46, 84.
[2] Oral arguments were limited to the motion for summary judgment since defendants' motion to dismiss was not filed until after the conclusion of oral arguments.

1

Louisiana.[3] Zeising and Shelton met with representatives of GE Capital ("GE") on June 20 and 21, 2011 to discuss financing for this venture.

Following their meeting with GE on June 21, 2011, Zeising alleges that he and Shelton "verbally agreed to jointly pursue the acquisition of the 29 Popeye's stores" and to form a Georgia limited liability company ("LLC") for that purpose.[4] Zeising alleges that the parties agreed that Shelton would be the "manager, chairman and chief executive officer" of the LLC and that Zeising would be its president.[5] Zeising asserts that the parties agreed that Shelton would oversee the restaurant operations, while Zeising would be responsible for "finance, accounting and outsourced services."[6]

Zeising and Shelton met again on the morning of June 22, 2011 and, at this breakfast meeting, agreed to a 70/30 split in ownership of the LLC with Shelton owning the majority stake.[7] The parties retained Steve Fetter ("Fetter"), an Atlanta attorney, to assist them in forming the LLC and the ultimate purchase of the 29 restaurants.[8] Zeising alleges that he worked "essentially full time" over the next few months in order to explore financing, negotiate the purchase agreement with TMC and undertake other due diligence measures to ensure the venture's success.[9]

Dixie was formed as a Georgia LLC on July 6, 2011 by the filing of a certificate of organization.[10] Fetter drafted an operating agreement for Dixie which was presented to the parties for review and signature.[11] Shelton did not sign the operating agreement.

---
[3] Complaint at ¶ 6; R. 48 at p. 6.
[4] Id. at pp. 11-12.
[5] Id. at p. 12.
[6] Id. at p. 12.
[7] R. 48 at p. 12.
[8] Id. at p. 13.
[9] Id. at p. 14.
[10] Id. at p. 14; R. 48-5 at pp. 18-19.
[11] Id. at p. 14.

Shelton signed several documents in his capacity as manager of Dixie, including an August 18, 2011 Asset Purchase Agreement, an escrow agreement and an October 15, 2011 Amended Asset Purchase Agreement.[12] After a period of negotiations, GE issued a proposal to Dixie in which GE proposed to finance 100% of the $29 million purchase price of the Popeye's stores.[13] In exchange, GE's proposal required that Shelton furnish collateral which Shelton characterizes as "his entire patrimony" in order to secure the financing.[14]

On September 13, 2011, Shelton informed Zeising that he would prefer to "go it alone" and ceased working toward the project with Zeising.[15] In February of 2012, Shelton completed purchase of the 29 Popeye's restaurants on behalf of SRG, a Louisiana LLC formed by Shelton.[16]

Plaintiffs filed this suit on October 2, 2012, alleging breach of an oral partnership contract between Zeising and Shelton and Shelton's breach of fiduciary duty owed to the partnership and Dixie LLC.[17]

## II. Applicable Standard

Fed. R. Civ. P. 56(a) provides that summary judgment shall be granted when the movant shows the absence of any genuine dispute as to any material fact and, for that reason, shows that he is entitled to judgment as a matter of law. The movant must demonstrate the absence of any genuine dispute as to any material fact by citing to particular parts of materials in the record, including depositions, documents and affidavits.[18] The movant may demonstrate entitlement to judgment as a matter of law by pointing out the nonmoving party's inability to produce evidence

---

[12] Id. at p. 15; R. 48-5 at pp. 59-93, 94-99; R. 48-6 at pp. 7-8.
[13] R. 48-6 at pp. 9-19.
[14] R. 46-1 at pp. 9-10.
[15] Id. at p. 10.
[16] Id. at p. 10.
[17] Complaint at ¶¶15-21.
[18] Fed. R. Civ. P. 56(c)(1)(A).

3

which, when taken as true for the purposes of the motion, would provide a legally sufficient basis upon which a reasonable jury might base a judgment in the nonmoving party's favor.[19]

Once a motion for summary judgment is made and properly supported, the burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claims.[20] In so doing, the nomoving party establishes the existence of a genuine issue of material fact for trial. The nonmoving party must show that the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor.[21] A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof.[22]

If the nonmoving party meets his burden of proof, summary judgment is inappropriate and the claims must be preserved for further proceedings. If, on the other hand, the nonmoving party does not meet his burden, the court must grant summary judgment in recognition of the implausibility of the claims at issue.[23]

All evidence submitted to the court in support of or in opposition to a motion for summary judgment must be of the sort which would be admissible at the trial of the matter.[24] "Metaphysical doubt" as to the existence of a genuine issue for trial is insufficient, as are "unsubstantiated assertions" and "conclusory allegations[.]"[25] The court will construe all

---

[19] Celotex Corp v. Catrett, 477 U.S. 317, 2553 – 54 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir. 1995); Shotak v. Tenneco Resins, Inc., 953 F.2d 909, 913 (5th Cir. 1992), cert. denied 506 U.S. 832 (1992).
[20] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994).
[21] Celotex, 477 U.S. at 325.
[22] Id.
[23] Id. at 322.
[24] Fed. R. Civ. P. 56(c)(2); Salas v. Carptener, 980 F.2d 299, 305 (5th Cir. 1992) quoting Broadway v. City of Montgomery, 530 F.2d 657, 661 (5th Cir. 1976).
[25] Little, 37 F.3d at 1075, citing Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), Lujan v. National Wildlife Federation, 497 U.S. 871, 871-73 (1986); Hopper v. Frank, 16 F.3d 92 (5th Cir. 1994).

evidence in the light most favorable to the nonmoving party, but will not infer the existence of evidence not presented.[26]

### III. Analysis

*<u>Claims for breach of contract and of fiduciary duty arising out of the alleged oral partnership contract preceding the formation of Dixie</u>*

Plaintiffs' complaint alleges that, during the breakfast meeting of June 22, 2011, "…Zeising and Shelton agreed to form a partnership for the purpose of buying and operating 29 Popeyes fast food restaurants in Louisiana and Texas and for the purpose of acquiring other restaurant businesses in the future."[27] Plaintiffs' complaint further alleges that Shelton breached the oral partnership contract when he repudiated the partnership and purchased the 29 restaurants through SRG, rather than on behalf of Dixie.[28] Zeising seeks damages in the form of lost profits as 30% partner; lost value of Zeising's 30% equity; lost value of Zeising's time in furtherance of the partnership; and lost value of Zeising's expenses and partnership debts.[29]

Although the parties agree that Georgia law governs claims arising out of Dixie, they disagree as to what law governs claims arising out of any alleged partnership agreement preceding the formation of Dixie. Defendants' motion asserts that, no matter whether Louisiana or Georgia law is applied, Zeising's breach of contract claim fails because the alleged contract does not constitute a valid partnership agreement under either state's law.

Citing Ga. Code Ann. §14-8-6(b), defendants assert that "the formation of a limited liability company necessarily precludes the existence of a partnership with the same business objective for which the LLC was formed." Thus, defendants argue that, since Dixie was formed under Georgia law as an LLC, no partnership entity is permissible.

---

[26] Lujan, 497 U.S. at 888.
[27] Complaint at ¶ 6.
[28] Id. at ¶ 15.
[29] Id. at ¶ 16.

Plaintiffs assert that Georgia law applies to this issue.[30] Specifically, plaintiffs deny that Zeising's breach of contract claim rests upon the contention that Dixie was simultaneously a partnership and an LLC. Instead, plaintiffs argue that the oral partnership agreement was "interim" in nature and, though not specifically alleged, ceased to exist when Dixie was formed as an LLC under Georgia law.[31] Within the same brief, plaintiffs also argue that interim oral agreement should be governed by Georgia's general contract law, which imposes a duty of good faith and fair dealing by the parties.[32]

Plaintiffs' complaint alleges, in part, the following:

> (b) The partnership would form a limited liability company to acquire the restaurant business for the partnership.
>
> \*        \*        \*        \*
>
> (d) The two partners, acting on behalf of the new LLC, would each use his best efforts to negotiate for the purchase from TMC Foods LLC and certain of its affiliates 29 Popeyes restaurants located in Louisiana and Texas.
>
> (e) The two partners, acting on behalf of the new LLC, would use their best efforts to arrange for approximately $30 million of permanent financing from GE Capital for the restaurant acquisition.
>
> (f) Once the terms of the restaurant acquisition and the financing had been agreed upon, the parties would execute the Dixie operating agreement, thereby becoming members of the LLC on a 70/30 basis. Thereafter they would abide by the terms and conditions set forth in the operating agreement and would operate the 29 Popeyes restaurants under the name and corporate umbrella of Dixie, using such subsidiary entities that might be formed to carry out the purposes of the business.[33]

---

[30] R. 48 at pp. 16-18.
[31] Id. at p. 15.
[32] Id. at p. 17;
[33] R. 1 at ¶ 8.

As cited above, Dixie's Certificate of Organization indicates that it was formed as a Georgia LLC on July 6, 2011. Assuming that any partnership agreement created by the parties was, as asserted by plaintiffs, "interim" in nature, it ceased to exist on or about July 6, 2011. Moreover, plaintiffs' complaint asserts that the parties intended to form an LLC and to be governed as such after its creation. Zeising's claim for breach of partnership contract is, again, premised on Shelton's failure to complete the purchase of the 29 restaurants on behalf of Dixie. With respect to plaintiffs' argument in favor of an interim partnership agreement, we find that, assuming that such an interim agreement was formed, it did not survive the formation of the LLC under Ga. Code Ann. §14-8-6(b). Accordingly, Shelton's cessation of work on behalf of Dixie does not constitute a claim belonging to Zeising as a partner in the interim partnership since, on September 13, 2011 when Shelton ceased working toward the acquisition on behalf of Dixie in order to "go it alone," the alleged partnership had been replaced by Dixie LLC.

In their opposition brief and at oral argument, plaintiffs argued that, even if the oral contract between Zeising and Shelton did not constitute a partnership, it constituted a valid oral contract under Georgia law and, thus, imposed upon both parties a duty of good faith and fair dealing.[34] Assuming the validity of this theory, despite its contradiction of plaintiffs' complaint as cited above, the court still finds that no claim lies. Plaintiffs' complaint clearly alleges that the parties intended to form an LLC and to proceed as an LLC in the purchase and operation of the 29 restaurants. Zeising's own testimony affirms that the parties intended to "run the business through the LLC."[35] Although the court is aware that Georgia law permits the survival of an oral contract when a subsequent written contract is contemplated as mere proof of the oral agreement,

---

[34] R. 48 at p. 17; Branch Banking and Trust Co. v. Lichty Bros. Constr., Inc., 488 Fed. Appx. 430 (11th Cir. 2012) citing Onbrand Media v. Codex Consulting, Inc., 687 S.E.2d 168, 176 (Ga. App. 2009) ("Every contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement.").

[35] Deposition of Zeising [R. 46-2] at 65:2-12.

7

we do not reach that result here.[36] The formation of an LLC is not merely proof of some prior oral agreement and thus, the court finds that, as of September 13, 2011, the pursuit of the acquisition was within the context of Dixie, not the alleged oral contract.

At oral argument, defendants emphasized Louisiana law as controlling on this issue. Under Louisiana law, a valid partnership must demonstrate the following criteria: (1) the parties must have mutually consented to form a partnership and to participate in the profits which may accrue from property, skill, or industry furnished to the business in proportions by them; (2) all parties must share in both profits and losses of the venture; and (3) the property or stock of the enterprise must form a community of goods in which each party has a proprietary interest.[37]

Defendants point out that testimony by both Zeising and Shelton proves that neither party intended to enter into a legal partnership and any reference to a "partnership" or to one-another as "partners" was colloquial and not intended as a legal designation.[38] Defendants assert that there was no discussion about the division of profits and/or losses among the parties. Finally, defendants aver that no community of goods belonging to the alleged partnership was ever formed.

Plaintiffs dispute defendants' assertion that the parties never discussed the allocation of profits and losses. Plaintiffs' complaint alleges that

> [a]ll profits and cash flow - after operating costs, salaries, and sufficient cash distribution to cover any income tax liability arising from the operation of the business – would be used to retire the GE Capital Franchise Finance debt as fast as possible to build equity value.[39]

---

[36] Barton v. Chemical Bank, 577 F.2d 1329, 1336 (5th Cir. 1978) (internal citations omitted).
[37] La. Civ. C. Art. 2801, et seq.; Norris v. Fontenot, 867 So.2d 179, 183 (La. App. 3 Cir. 2004).
[38] Deposition of Zeising [R. 46-2] at pp. 63-65; Deposition of Shelton [R. 46-3] at pp. 62, 64.
[39] Complaint [R. 1] at ¶ 8(g).

Thus, we consider the issue of profit and loss sharing to be disputed among the parties, though we note that plaintiffs have not technically alleged that there was an agreement among the parties as to how losses would be treated under their arrangement.

Plaintiffs do not dispute testimony from both Zeising and Shelton denying that they intended to form a legal partnership entity, but do argue that a community of goods was formed because the loan commitment letter and Asset Purchase Agreement constituted valuable contract rights. These documents will be discussed in more detail below, but the court rejects any argument that these documents formed a community of goods belonging to a Louisiana partnership, as they were clearly executed on behalf of or for the benefit of Dixie, a Georgia LLC, after its formation on July 6, 2011.[40] Thus, assuming for summary judgment purposes that plaintiffs have adequately refuted defendants' argument as to a lack of defined profit and loss sharing, we still find that plaintiffs fail to rebut the absence of the intent and community of goods factors. Accordingly, even if the court were to find that Louisiana law applied to the alleged oral interim partnership, such oral agreement fails to qualify as a valid partnership contract under Louisiana law.

The court notes that, even if it were to find that the parties formed a Louisiana partnership, the undisputed evidence before us demonstrates that Shelton withdrew from any such entity in September of 2011 when he informed Zeising and Fetter that he no longer wished to pursue the acquisition with Zeising and would, instead, continue alone.[41] As asserted by defendants, Shelton's exit left only Zeising and, thus, any partnership they once belonged to was terminated.[42] Defendants aver that no liquidation of the purported partnership would have been necessary, since the entity would have had no assets, business or contributions in need of

---

[40] Assett Purchase Agreement [R. 48-5 at pp. 59-93]; GE commitment letter [R. 48-6 at pp. 67-82].
[41] R. 48-6 at pp. 22-25.
[42] La. Civ. C. Art. 2828.

9

repayment.[43] Plaintiffs do not dispute this. As such, any fiduciary duty Shelton might have owed to the partnership was terminated prior to Shelton's acquisition of the Popeye's restaurants on behalf of SRG.[44]

Given these findings, the court concludes that Zeising's claim against Shelton for breach of contract stemming from a purported oral contract, either general or for the formation of a legal partnership, fails as a matter of law and should be denied and dismissed with prejudice. Moreover, because the court finds that, whether under Georgia or Louisiana law, no legal partnership existed between Zeising and Shelton, any claims for breach of fiduciary duty by Shelton arising under an alleged oral partnership agreement fail as a matter of law and must also be denied and dismissed with prejudice.

### *Claim for breach of fiduciary duty arising out of Dixie*

Plaintiffs' complaint alleges that, as manager of Dixie, Shelton owed a fiduciary duty to both Zeising and Dixie, and that Shelton breached that duty when he appropriated the restaurant acquisition for himself and/or SRG.[45] Plaintiffs assert that Shelton's modification of the APA and GE financing terms to substitute himself and/or SRG in place of Dixie was also a breach of this duty.[46] Plaintiffs Zeising and Dixie each assert damages stemming from Shelton's alleged breach, including lost future profits flowing from the 29 restaurants eventually purchased by SRG.[47]

Defendants aver that plaintiffs' breach of fiduciary duty claims fail as a matter of law because the business opportunity allegedly usurped by Shelton was not one belonging to Dixie so as to create a cause of action under applicable law. As explained above, the parties agree that

---

[43] R. 46-1 at pp. 19-20.
[44] La. Civ. C. Arts. 2809, 2830; Edco Properties v. Landry, 371 So.2d 1367, 1373 (La. App. 3 Cir. 1979).
[45] R. 1 at ¶¶18-21.
[46] Id.
[47] Id.


Dixie was deliberately and duly organized under the law of the State of Georgia and that, as such, all claims asserted by Zeising and Dixie are governed by Georgia law. Georgia law recognizes a claim for usurpation of business opportunity arising out of a corporate officer's fiduciary duty.[48]

Defendants note that a claim for usurpation of business opportunity may only be brought by Dixie and argue that any such claim by Zeising individually must be dismissed because he lacks standing to assert it. The court agrees. To the extent that Zeising, in his individual capacity, asserts a separate claim against Shelton for usurpation of business opportunity resulting in a breach of fiduciary duty to Dixie, such claim fails as a matter of law and will be dismissed.[49]

Turning to the remaining usurpation claim by Dixie, Georgia law instructs that the court must ask whether the business opportunity is (1) one which the corporation is financially able to undertake; (2) one falling within the line of business of the corporation and is of practical advantage to the corporation; and (3) one in which the corporation has a reasonable expectancy. If these three questions are answered affirmatively, then the self-interest of the officer or director conflicts with the interest of his corporation and the law will not permit him to seize the opportunity for himself.[50]

The test assumes that the defendant held status which imposed upon him a fiduciary duty to the corporation.[51] The issue of Shelton's status within Dixie is an important one that must be examined prior to further analysis, since a party owing no fiduciary duty may not be found liable for usurpation of business opportunity since the duty to refrain from such behavior flows from

---

[48] Parks v. Multimedia Technologies, Inc., 520 S.E.2d 517 (Ga. App. 1999).
[49] Ga. Code Ann. §14-2-831(a)(1)(c); Phoenix Airline Services, Inc. v. Metro Airlines, Inc., 397 S.E.2d 699, 701 (Ga. 1990).
[50] In re Pervis, ___ B.R. ___, 2014 WL 2559109, *12 (N.D. Ga. 2014) (internal citations omitted).
[51] Ga. Code Ann. §14-11-305(1).

the party's underlying fiduciary duty to the corporation.[52] The parties seem to disagree over Shelton's prior status within Dixie, though they agree that he is no longer a member or manager of the LLC. Zeising claims to be the sole remaining member of Dixie, but claims that Shelton was, at the time of the events giving rise to this suit, a member and manager. Shelton denies that he was ever a member or manager.

The Articles of Organization filed by Dixie on July 6, 2011 includes the designation "no optional provisions."[53] Zeising is listed as the registered agent and sole organizer of Dixie.[54] No members or managers are listed.[55] Under Georgia's Limited Liability Company Act ("Act"), unless specified in the articles of organization or a written operating agreement, the authority to manage the business of an LLC is vested in its members.[56] A "member" is defined as "a person who has been admitted to a limited liability company as a member as provided in Ga. Code Ann. §14-11-505 and who has not ceased to be a member as provided in §§14-11-601 or 14-11-601.1." Section 505 of the Act specifies that a person is admitted as a member of an LLC upon the later to occur of:

(1) The formation of the LLC; or

(2) The time provided in the articles of organization or a written operating agreement or, if the articles of organization and any written operating agreement do not so provide, when the person's admission is reflected in the records of the LLC.[57]

---

[52] In re Pervis, 497 B.R. 612, 631 (N.D. Ga. 2013) quoting Quinn v. Cardiovascular Physicians, P.C., 326 S.E.2d 460 (1985).
[53] R. 48-5 at p. 19.
[54] Id.
[55] Id.
[56] Ga. Code Ann. §14-11-304(b).
[57] Ga. Code Ann. §14-11-505(a)(1) and (2).

Although Fetter drafted an operating agreement and sent it out to the parties for review and signature, Shelton did not sign the agreement. Thus, any operating agreement as to Dixie was oral, rather than written. The parties do not dispute that no members were listed in Dixie's Articles of Organization or that the LLC had no formal records which might indicate admission of members. Under these facts, Dixie had no members as contemplated in Section 505 of the Act.

Similarly, Dixie had no managers, since none were designated in Dixie's Articles of Organization or a written operating agreement.[58] Moreover, Section 304(b)(1) requires that a manager be "designated, appointed, elected, removed or replaced by the approval of more than one half by number of the members." We note that Section 304(b)(2) expressly permits a person who is not a member of an LLC to be designated as a manager, but still find that Shelton was never lawfully designated a manager of Dixie as required under Section 304(a) and (b). Assuming that Dixie possessed an oral operating agreement, such oral designation of manager status is without effect since Georgia law clearly insists that an LLC identify any members and managers in writing.

Given these findings, the court concludes that Shelton held no status with respect to the LLC which would have imposed a fiduciary duty on him as to Dixie. Thus, Dixie's claim for usurpation of business opportunity fails as a matter of law.

Out of an abundance of caution, we also note that, were we to somehow find that Shelton enjoyed status as to Dixie in return for which he owed a fiduciary duty, Dixie's claim for usurpation of business opportunity would still fail because plaintiffs are unable to show the requisite factors of that claim. Specifically, the court finds that Dixie was not financially able to undertake the restaurant acquisition. Dixie had no assets with which to obtain financing for the

---

[58] Ga. Code Ann. §14-11-304.

transaction and was not entitled to rely on Shelton's collateral. Even if the court were to assume the existence of an oral operating agreement including an oral promise by Shelton to pledge his collateral, Georgia law requires that a promise of this nature be reduced to writing.[59]

Plaintiffs assert that the theory of partial performance applies in this case, bringing it within an exception to the writing requirement under Ga. Code Ann. §13-5-31, which provides that §13-5-30 does not apply when

> (1) The contract has been fully executed;
>
> (2) There has been performance on one side, accepted by the other in accordance with the contract; or
>
> (3) There has been such part performance of the contract as would render it a fraud of the party refusing to comply if the court did not compel performance.

Plaintiffs point to Shelton's execution of the APA on behalf of Dixie as a writing within the requirements of Georgia law and alternatively argue that Shelton's negotiations with GE in which he voiced no objection to the collateralization of his assets constitute partial performance, especially in light of GE's commitment letter, issued in favor of Dixie. The court does not agree.

The APA does not evidence Shelton's promise to collateralize his assets and, instead, merely guarantees Dixie the right to purchase the restaurants at an agreed price within a specified period of time when certain precedent conditions are met.[60] Additionally, we reject plaintiffs' argument that the APA constituted a valuable asset belonging to the LLC. Without a valid and enforceable promise to lend collateral from Shelton, Dixie had no means by which to purchase the restaurants at issue. Although Zeising asserts that he possesses assets which might have been substituted for those of Shelton, enabling Dixie to proceed, there is no evidence that the parties

---

[59] Ga. Code Ann. §§13-5-30(2), (7); 14-11-402(a).
[60] R. 48-5 at pp. 59-93.

contemplated any contribution by Zeising in their purported oral operating agreement.[61] Moreover, the court does not find that we are required to assume that GE would have offered the same financing with different collateral. In reality, changing the collateral may change the terms of the financing entirely. Plaintiffs' argument asks the court to infer (1) the existence and value of adequate assets belonging to Zeising; (2) that the parties agreed that, if Shelton became unable or unwilling to collateralize his own assets, Zeising would step in and fill the void; and (3) that TMC and GE would have accepted the new version of the deal on identical terms. The court is not required to hypothesize about what other deals might have been structured in place of the deal at issue. Dixie's claim is for usurpation of a single, defined opportunity and, thus, our analysis must also be so tailored.

Similarly, the commitment letter issued by GE in favor of Dixie does not constitute partial performance since such a document is not binding on the borrower and may be rejected. In Breckenridge Crest Apartments v. Citicorp,[62] the U.S. District Court for the Northern District of Georgia held that a commitment letter issued by Citicorp was preliminary or preparatory in nature, citing Hudson v. Venture Industries, Inc., a 1979 Georgia Supreme Court ruling, and did not obviate the Georgia Statute of Frauds requiring that promises to lend money be made in writing.[63] We find the ruling in Breckenridge result warranted in this matter.

Returning to the elements of a claim for usurpation of business opportunity under Georgia law, the court would also find that Dixie has no customary business and so the restaurant acquisition at issue, though clearly the object of the negotiations among the parties, cannot fairly be said to be within the corporations' line of business. Lastly, the court would find

---

[61] The court specifically notes that the email correspondence between Zeising and Shelton following Shelton's announcement that he would go it alone does not mention any potential collateral contribution by Zeising. See, e.g., R. 48-6 at pp. 22-25.
[62] 826 F.Supp. 460 (N.D. Ga. 1993).
[63] 243 Ga. 116, 119 (1979) quoting Utica Tool Co. v. Mitchell, 218 S.E.2d 650, 652 (1975).

that Dixie had no reasonable expectation of completing this transaction given the lack of financial wherewithal to secure financing as explained above.

For the reasons expressed above, the court finds that plaintiffs' claims for breach of fiduciary duty by usurpation of business opportunity should be denied and dismissed with prejudice.

### *Claim for Injunctive Relief*

Plaintiffs' complaint includes a prayer for injunctive relief seeking an injunction from this court "prohibiting Shelton from cutting Zeising out of ownership of the business and ordering SRG to admit Zeising as a 30% member with all the rights to which he would be entitled as spelled out under Dixie's operating agreement."[64] Defendants assert that injunctive relief is inappropriate in this case because (1) plaintiffs' claims fail as a matter of law; and (2) were plaintiffs to prevail on their claims, injunctive relief is unavailable under applicable Louisiana law. The court agrees.

Were the court to find that one or more of plaintiffs' claims remained viable after consideration of defendants' motion, we would still find that all claims for injunctive relief in this matter should be dismissed. When state law governs the underlying substantive right asserted by a party, state law also governs the availability of equitable remedies such as injunctive relief.[65] Under both Georgia and Louisiana law, injunctive relief is available only when the failure to provide such relief will result in irreparable injury, loss or damages to the

---

[64] R. 1 at ¶ 24.
[65] 19 Charles A. Wright & Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4513 at 214 (1982).

applicant.[66] Irreparable injury is interpreted in both jurisdictions as that which may not be adequately compensated in money damages.[67]

In this matter, were we to find that plaintiffs were entitled to a share of profits from the 29 Popeye's restaurants at issue, no evidence has been presented that monetary damages would be inadequate to compensate plaintiffs. Thus, under both Georgia and Louisiana law, injunctive relief would be unavailable and such claim should be denied and dismissed with prejudice for all the reasons expressed above.

### *Claim of Constructive Trust as to Shelton Restaurant Group*

Plaintiffs' amended complaint adds a claim of constructive trust over SRG under Georgia law.[68] As argued by defendants, Louisiana law does not recognize the equitable remedy of constructive trust.[69] Georgia law provides that

> [a] constructive trust is implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity.[70]

While the court agrees with plaintiffs that Georgia law governs the availability of this remedy because, as explained above, the alleged breach occurred within the context of the LLC, which is expressly subject to Georgia law, we do not find that plaintiffs have shown entitlement to this equitable remedy, also for reasons explained above. In short, plaintiffs have no legally enforceable claim to the Popeye's restaurants or to profits derived therefrom, so no remedy need be created in equity to preserve plaintiffs' interests over these assets, now belonging to SRG.

---

[66] McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) citing All Care Nursing Serv., Inc. v. Bethesda Mem'l. Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989); La. C.C. P. Art. 3601.
[67] Cunningham v. Adams, 808 F.2d 815, 821 (11th Cir. 1987) (internal citations omitted); Terrebonne Parish Police Jury v. Matherne, 405 So.2d 314 (La. 1981); Pennington v. Drews, 24 So.2d 156 (La. 1945).
[68] R. 79.
[69] Marple v. Kurzweg, 902 F.2d 397 (5th Cir. 1990); Schwegmann v. Schwegmann, 441 So.2d 316 (La. App. 5 Cir. 1983).
[70] Ga. Code Ann. §53-12-132(a).

Defendants' motion to dismiss plaintiffs' amended complaint as to the claim for constructive trust will be granted.

### *Claim of Unjust Enrichment as to Shelton*

Plaintiffs' amended complaint alleges that "Shelton agreed to pay or implied that he would pay Zeising for the reasonable value of his services[,]" but Zeising was never compensated for those services.[71] Defendants' motion asserts that Zeising's individual claim against Shelton for unjust enrichment fails under Louisiana law because unjust enrichment may not be pled in the alternative and is only available when no other cause of action can be asserted. Specifically, defendants cite Zaveri v. Condor Petroleum Corporation, a recent ruling by Magistrate Judge Hill of this court, granting summary judgment as to an unjust enrichment claim asserted alternatively.[72] Defendants assert that, under the reasoning of Zaveri and cases cited therein, Zeising may not claim unjust enrichment because he has already asserted claims against Shelton for breach of contract, alleging that Shelton breached an oral interim partnership agreement among these parties. Zeising argues that Georgia law should apply to his unjust enrichment claim because Georgia law governs issues related to the LLC.

The court has reviewed plaintiffs' amended complaint and finds that the issue of whether or not Zeising's unjust enrichment claim is subject to dismissal would require the court to inquire beyond the scope of the pleadings.[73] While the amended complaint, as quoted above, clearly references a promise to pay, implicating contractual claims, it is not clear from the face of the complaint whether plaintiff asserts that Shelton made a promise to pay him as a part of the alleged partnership agreement, the oral operating agreement or some other purported contract.

---

[71] R. 79 at ¶ 29.
[72] 2014 WL 2801322 (W.D. La. 2014).
[73] Fed. R. Civ. P. 12(b)(6); Jackson v. City of Beaumont Police Dept., 958 F.2d 616, 618 (5th Cir. 1992); Martin v. Morgan Drive Away, Inc., 665 F.2d 598 (5th Cir. 1982).

The specific factual allegations necessary for the court to determine whether Georgia or Louisiana law should apply are also not discernible from the face of the pleadings. While defendants correctly argue that Louisiana law does not permit plaintiff to plead unjust enrichment in the alternative, Georgia law, as correctly cited by plaintiffs, would permit the claim.[74]

Plaintiffs' amended complaint alleges a claim for unjust enrichment which is not implausible on its face, making dismissal inappropriate. Accordingly, defendants' motion to dismiss will be denied as to this particular claim.

The court will issue a judgment in conformity with these findings, directing entry of final judgment under Fed. R. Civ. P. 54(b) on all claims denied and dismissed on the motions at bar, as it finds no just cause for delay in appellate consideration, should appeal be desired by any party.

**Alexandria, Louisiana**
**July 18, 2014**

_____
JAMES T. TRIMBLE, JR.
**UNITED STATES DISTRICT JUDGE**

---

[74] See, e.g., Clark v. Aaron's, Inc., 914 F.Supp.2d 1301 (N.D. Ga. 2012).